<div style="margin-left:2em">COMMONWEALTH<br>*vs.*<br>CRAIG, &c.</div>

---

<div style="margin-left:2em">INDICTMENT.<br><br>Case 2.</div>

<div style="text-align:center">

## Commonwealth *vs.* Craig, &c.

APPEAL FROM JEFFERSON CIRCUIT.

No appeal lies to this court from a judgment in a criminal case, rendered previously to the first day of July, 1854.

</div>

The facts of the case are fully set out in the opinion of the court.

*Harlan, Attorney General,* for commonwealth—

The question presented to this court is whether the production of the law chartering a bank, the notes of which are forged, is absolutely necessary to authorize the conviction of one who is indicted for uttering forged bank notes, knowing them to be forged and counterfeited.

The decision of this question cannot affect the right of the defendants to this indictment, but it is very important to have a decision of the question by this court. An immense amount of the bank notes of other States are in circulation in this State, and if it be necessary to send to other States for their laws in order to insure a conviction, very few of those indicted for passing counterfeit money will be convicted; because no means are provided to defray the expense, and attorneys for the commonwealth will not do it, as they have neither fees nor perquisites in such cases.

The indictment is for violating the 1st section of article 10 of the Revised Statutes, page 255. It is not essential to aver that the act was done to defraud any person or corporation; and the indictment does not contain any such averment. The law applicable to the question may be found in 3 *Greenleaf on Ev.* sec. 113; 6 *Sargeant & Rawle,* 568; 25 *Wendell,* 473; 5 *Leigh,* 720; 2 *Harrington's Del. Rep.* 397; 21 *Wendell,* 309. From these authorities the conclusion is warranted that the circuit judge erred in instructing the jury that it was necessary to have the law chartering the bank of the State of Ohio. It would have been necessary if the indictment had charged an "intention to defraud that bank."

The uttering a counterfeit bank note constitutes the offense under our statute. In such a case three inquiries are to be made: 1. Did the prisoner utter or tender in payment the note charged to be counterfeit? 2. Was it counterfeit? 3. Did the prisoner know it to be counterfeit? If these questions are sustained affirmatively, the offense is established.

COMMONWEALTH
  *vs.*
CRAIG, &c.

There was no question raised as to the character of the evidence necessary to establish the fact that the notes were counterfeit; that fact seemed to be conceded. I think therefore that this court should decide the question which was made by the instruction given by the Circuit Court.

*Hamilton Pope*, for appellees.

June 5.

Judge SIMPSON delivered the opinion of the Court—

The defendants were indicted for uttering and tendering in payment for merchandise purchased by them, forged and counterfeited bills on the State Bank of Ohio, knowing the same to be forged and counterfeited.

The witnesses on the part of the commonwealth proved, on the trial, that the defendants passed counterfeit notes on the Bank of Ohio, and that a large amount of spurious money was found in the possession of one of them, when they were arrested. But there was no testimony that there was any such corporation, as the State Bank of Ohio, in existence, or that notes of such a bank were in circulation, unless an inference that such was the fact might arise from the proof that the bank notes, passed by the defendants, were counterfeited.

The court instructed the jury that they should find the prisoners not guilty, unless the commonwealth proved that the State Bank of Ohio was in existence, regularly chartered by law to issue notes, and that the proof thereof must be made by the production of the charter of the bank, as passed by the Legislature of the State of Ohio.

A verdict and judgment of acquittal were entered for the defendants, and the commonweaith has brought the case to this court by appeal.

The judgment was rendered in June, 1854. The Code of Practice in Criminal Cases took effect the 1st day of July, 1854. The first question that arises in the case is, can the appeal be maintained?

At the time the judgment was rendered, according to the then existing law, no appeal was allowed in cases of felony, but the judgment of the Circuit Court in such cases was final and irreversible. There is nothing in the Code that indicates any intention on the part of the Legislature that it should have a retrospective operation. On the contrary, the second section enacts that all prosecutions or proceedings in criminal or penal cases which should be commenced before the 1st day of September, 1854, and which by the existing laws would be valid, should not be rendered invalid by that act, but might be prosecuted to their conclusion, and enforced according to the existing laws, as if that act had not been passed; thus giving the option to proceed from the 1st July, 1854, until the first day of the following September, either under the Code or under the previous law.

The provisions of the Code do not apply to judgments rendered prior to the 1st day of July, 1854. Such judgments in criminal cases are irreversible, unaffected by the Code, and cannot be appealed from.

Wherefore, the appeal in this case is dismissed.

No appeal lies to this court from a judgment in a criminal case, rendered previously to the first day of July, 1854.